*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0193P (6th Cir.)
File Name: 00a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

| | | |
|---|---|---|
| ERNESTINE CARTER HUGHES, *Plaintiff-Appellant,* | | |
| *v.* | | No. 99-5499 |
| VANDERBILT UNIVERSITY, WILLIAM J. DARBY, M.D., THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, THE NUTRITION FOUNDATION, INC., and THE ROCKEFELLER FOUNDATION, *Defendants-Appellees,* | | |
| THE STATE OF TENNESSEE, *Defendant.* | | |

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00770—Thomas A. Higgins, District Judge.

Argued: March 6, 2000

Decided and Filed: June 7, 2000

Before:  SILER and GILMAN, Circuit Judges;
O'MALLEY, District Judge.[*]

————————————

**COUNSEL**

**ARGUED:**  Phillip L. Davidson, Nashville, Tennessee, for
Appellant.  Robert P. LoBue, PATTERSON, BELKNAP,
WEBB & TYLER, New York, New York, for Appellees.
**ON BRIEF:**  Phillip L. Davidson, Nashville, Tennessee, for
Appellant.   John S. Bryant, BASS, BERRY & SIMS,
Nashville, Tennessee, Francis H. Young, METROPOLITAN
DEPARTMENT OF LAW, Nashville, Tennessee, John L.
Chambers, STOKES & BARTHOLOMEW, Nashville,
Tennessee, John W. Wagster, HOLLINS, WAGSTER &
YARBROUGH, Nashville, Tennessee, for Appellees.

   GILMAN, J., delivered the opinion of the court, in which
SILER, J., joined.  O'MALLEY, D. J. (p. 13), delivered a
separate opinion concurring in the result only.

————————————

**OPINION**

————————————

   RONALD LEE GILMAN, Circuit Judge.  Ernestine Carter
Hughes contends that the defendants unlawfully subjected her
to dangerous medical tests in 1945 when she was a child.  The
district court concluded that Hughes's 1998 action was barred
by the statute of limitations.  Hughes now challenges that
decision.  For the reasons set forth below, we **AFFIRM** the
judgment of the district court.

————————————

   [*] The Honorable Kathleen M. O'Malley, United States District Judge
for the Northern District of Ohio, sitting by designation.

## I.  BACKGROUND

### A.  Factual background

In 1945, Vanderbilt University conducted a three-month study to further understand how iron is absorbed in the human body.  The study, which was funded by the Nutrition Foundation, Inc. (NFI), the International Health Division of the Rockefeller Foundation (Rockefeller), and the Tennessee Department of Health, involved nearly 200 children from the Caldwell and Ransom elementary schools in Nashville, Tennessee.  William J. Darby, M.D., was one of the principal researchers.  The students, most of whom were between the ages of seven and ten, were given lemonade that had been laced with radioactive iron.  Darby and his colleagues analyzed before-and-after blood samples drawn from the children, and then published the results of their work in the *Journal of Nutrition*.

At all times relevant to this case, Hughes resided in Nashville.  In 1945, she was eight years old and a student at the Caldwell elementary school.  Vanderbilt records reflect that Hughes, then known as Ernestine Carter, was one of Darby's subjects.

The 1945 study failed to draw any significant public attention until January 13, 1994, when a Nashville newspaper, *The Tennessean*, ran a front-page story recounting the nature of the testing involved.  Titled "Students Given Radioactive Drink," the article was based on a Vanderbilt press release to be issued the following day.  *The Nashville Banner* printed a similar piece on the cover of its January 14, 1994 issue.

On January 17, 1995, Katherine Henley, who alleged that she was one of the students subjected to the study, filed a class action against the defendants in the United States District Court for the Middle District of Tennessee.  That case garnered its own share of media attention.  On January 18, 1995, *The Tennessean* again ran a front-page story on the matter and, on January 19, 1995, CBS's Nashville television affiliate reported on the suit during three different broadcasts.

In August of 1997, however, Henley admitted that at the time of the study she was not enrolled in either the Caldwell or Ransom elementary schools. This revelation was also reported by *The Tennessean*. Her case was dismissed on or about July 8, 1998.

## B.  Procedural history

On August 24, 1998, Hughes, on behalf of herself and all others similarly situated, filed suit against Vanderbilt, Darby, the Metropolitan Government of Nashville and Davidson County, NFI, Rockefeller, and the State of Tennessee. In addition to a request for class action certification, her complaint alleged violations of 42 U.S.C. §§ 1983 and 1985, and set forth claims of negligence, battery, and strict liability (based on ultrahazardous activity). The factual allegations made by Hughes included the assertion that "Vanderbilt and Darby . . . intentionally forced plaintiff to ingest radioactive iron by forcibly holding her mouth open and instilling the radioactive substance into her mouth against her will, ignoring her protests." She further alleged that, as a result of the ingestion, "she has suffered loss of weight, blood problems, tumors, and other severe, physical problems." Hughes also addressed the timing of her suit:

> On July 8, 1998, the plaintiff was first informed that she was a subject of this radiation experiment by way of learning that a lawsuit [that] was filed by Katherine Henley on or about late April 1997 had been dismissed. In late 1993 and early 1994, the first disclosures of many human radiation experiments came out in the press, including other experiments conducted by . . . Vanderbilt. However, plaintiff was not aware of these disclosures until she learned that the Henley lawsuit . . . had been dismissed. . . .

> The plaintiff and class members, in the exercise of reasonable diligence, did not know or have reason to know the true nature and dangers of the radioactive experimentation to which they were subjected to in the past, and *plaintiff and class members did not know or*

_____

## CONCURRENCE

_____

KATHLEEN McDONALD O'MALLEY, District Judge, concurring. I respectfully concur in the result only. I do not agree that the allegations in Hughes's complaint operate to bar her claim as a matter of law; the allegations to which the majority and the district court cite are far too imprecise to be read as binding admissions on this important dispositive issue. I also cannot agree that, on the record presented, Hughes should be charged with the knowledge that what happened to her as a child was wrongful, so as to bar her claim at or near the time she reached majority. I concur solely because I believe that, in the circumstances presented here – where there were numerous newspaper articles and television broadcasts regarding these events – Hughes should have known of the injury which is the basis for her action. *See Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).

I further note that I do not believe that advertising alone would necessarily, or even usually, be sufficient to begin the running of the statute of limitations. If the circumstances had been marginally different – if the media had been less comprehensive in its coverage, or if Hughes did not live in the city where the media coverage occurred – I likely would be unwilling to conclude, at the summary judgment stage, that Hughes had constructive knowledge of the event. I am, however, comfortable in the narrow circumstances presented here agreeing with the majority's conclusion that the "publicity was sufficient to charge Hughes with constructive knowledge of the events underlying her cause of action. . ." *See* Op. at 9.

in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*United States v. Kubrick*, 444 U.S. 111, 117 (1979) (citations and internal quotation marks omitted).

Our holding reflects these important principles. The Vanderbilt study occurred more than fifty years prior to the filing of this lawsuit. Darby, the only researcher still alive, is allegedly in poor health and would be unable to testify. The Rockefeller representatives who were involved in funding the program are apparently all deceased. It would also be difficult, if not impossible, for a jury to fully understand the scientific and ethical context in which these experiments took place. These circumstances illustrate why this court has observed as follows: "'Statutes of limitations are vital to the welfare of society and are favored in the law.' Stale conflicts should be allowed to rest undisturbed after the passage of time has made their origins obscure and the evidence uncertain." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (quoting *Wood v. Carpenter*, 101 U.S. 135, 139 (1879)).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

*have reason to know of their claims* for relief against the defendants in regard to the Caldwell and Ransom Schools radioactive iron experiment *until about January 14, 1994, and later*. A great many members of the class still do not know about the experiment.

(Emphasis added.)

In October and November of 1998, all of the defendants filed dispositive motions based on the assertion that Hughes's action was barred by the statute of limitations. Several affidavits and exhibits were submitted by the parties in support of, and in response to, these motions.

On November 19, 1998, Hughes moved to amend her complaint by changing the date cited in the excerpt above—that is, the portion of her complaint alleging that she and the class members did not know or have reason to know of the existence of their claims "until about January 14, 1994, and later." Hughes stated in an affidavit filed on December 1, 1998 that she did not know about the study "until July 8, 1998." Her request to amend, however, was denied. The docket entry of the district court's decision states that "this motion is unsupported other than [by] the assertion of counsel as to a 'typographical' error which is contradicted by his having signed the pleading in the Henley action . . . ."

All of the defendants' motions were referred to a magistrate judge for a ruling. On January 19, 1999, the magistrate judge issued his report and recommendation. At the outset, the magistrate judge noted that he would consider the evidentiary materials filed by the parties and, in turn, treat the motions to dismiss as requests for summary judgment. Then, after setting forth the facts and the applicable standard of review, the magistrate judge addressed the apparent conflict between the January 14, 1994 date set forth in Hughes's complaint and the July 8, 1998 date alleged in her affidavit. Citing the denial of Hughes's motion to amend her complaint, the magistrate judge stated that he "does not deem [her] subsequent affidavit to create a material factual dispute . . . ."

The magistrate judge then discussed the applicable law regarding the statute of limitations and concluded as follows:

> [B]y her own admission in her complaint, plaintiff cites that she was aware or reasonably should have been aware of her claims in [January], 1994 . . . . Plaintiff also states that there were public studies on the Caldwell project that were published in 1994, although she states that she was not aware of them until July 8, 1998. . . . Moreover, the manner in which Hughes described her ingestion of this liquid as "forced by the defendants against her will" . . . also suggests Hughes['s] longstanding awareness of the cited facts underlying her claims.

After citing the media reports concerning the Vanderbilt study and Henley's suit, the magistrate judge reiterated his view that "[t]he existence of litigation on the same project and the attendant publicity would have placed a reasonable person on knowledge [sic] of her federal claims by July, 1994 and no later than July, 1995 when the *Hensley* action was filed and its prominent publicity was widespread." The magistrate judge then recommended that all of the defendants' motions be granted.

On March 9, 1999, the district court, without further analysis, adopted the magistrate judge's recommendation and dismissed Hughes's complaint on the basis of the statute of limitations. In this appeal, Hughes does not take issue with the district court's denial of her motion to amend her complaint. Rather, Hughes asserts that (1) she was not aware that she had been a subject of Darby's tests until July 8, 1998, and (2) the issue of whether she had exercised reasonable care and diligence in discovering her cause of action should have been submitted to a jury.

## II.  ANALYSIS

### A.  The nature of the motions being reviewed

Although not raised as an issue of contention between the parties, it is important to clarify the nature of the motions

it does constitute an admission that a reasonable person *should have been aware* of the claims at issue by that date. This admission, moreover, was not an "accidental" inclusion. Henley, who was represented by Hughes's attorney, used the same date in her earlier action.

In point of fact, Hughes's claim may have been barred decades ago, one year after she attained her majority. *See* TENN. CODE. ANN. § 28-1-106 (setting forth the accrual rule for persons under the age of eighteen at the time a cause of action accrues). Hughes specifically alleged in her complaint that "Vanderbilt and Darby . . . *intentionally forced plaintiff to ingest radioactive iron by forcibly holding her mouth open and instilling the radioactive substance into her mouth against her will, ignoring her protests.*" (Emphasis added.) Although there may have been no way for her to know that she was being given a *radioactive* substance, her detailed description of the manner in which Darby and his colleagues administered the test is probably sufficient to have obligated her to investigate further once she reached the age of majority. We need not, however, answer this question because of the extensive media publicity in the mid-1990s and because of her judicial admission regarding when persons in her position should have learned of the studies.

In light of Hughes's alleged medical problems, we recognize that any procedural bar may at first blush seem unfair. There is, however, a broader principle at stake. As the Supreme Court has stated:

> [S]tatutes of limitations, which are found and approved in all systems of enlightened jurisprudence, represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases

used reasonable diligence is tested by an objective standard.").

Based on the undisputed facts concerning the media attention given to the Vanderbilt study in question, no reasonable factfinder could find that Hughes's cause of action accrued any later than January 19, 1995. This was the date that Nashville's CBS affiliate reported the filing of Henley's class action lawsuit against the same defendants involved in the present action. By this time there had been numerous news reports both in print and on television discussing the facts supporting Hughes's claims, beginning with *The Tennessean*'s front-page story on January 13, 1994. Hughes filed her complaint on August 24, 1998, long after the one-year period in which to file her cause of action had ended. As such, her suit is untimely.

Hughes's own complaint in this case supports our conclusion. As previously noted, the district court ruled that Hughes's claim accrued on January 14, 1994, the date she cites in her complaint. Plaintiffs are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."); *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986) ("Not only are such admissions . . . binding before the trial court, but they are binding on appeal as well."). Moreover, such admissions can undermine the timeliness of a plaintiff's claim. *See, e.g.*, *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987) (holding that the plaintiff was bound by admissions in his pleadings as to when he first discovered defendants' misconduct).

Even if the relevant statement made in her complaint does not establish that it was Hughes—as opposed to others in the potential class—who learned of the facts on January 14, 1994,

being reviewed. Pursuant to the Federal Rules of Civil Procedure,

[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

FED. R. CIV. P. 12(b).

Here, the district court adopted the magistrate judge's report and recommendation in which the magistrate judge explicitly noted that, pursuant to Rule 12(b), he was electing to consider the evidentiary materials submitted by the parties and treat the motions to dismiss as motions for summary judgment. Nonetheless, both the magistrate judge in his recommendation, and the district court in its order, continued to refer to "the motions to dismiss." Despite these misstatements, this court will treat the rulings below as granting summary judgment. *See United Bhd. of Carpenters v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 558 (6th Cir. 1991) (holding that the district court's decision should be viewed as one granting summary judgment, despite the fact that the district court committed an "error in nomenclature" by continuing to use the term "dismissal" even after its consideration of an affidavit converted the proceeding into one governed by Rule 56).

## B.  Standard of review

We review de novo the district court's grant of summary judgment. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).   The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

**C.  The district court did not err when it held that Hughes's suit was untimely**

Hughes does not dispute the magistrate judge's use of Tennessee's one-year statute of limitations as the controlling statute.   Indeed, "[i]n all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied." *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986).  Following this rule, the applicable limitations period in Tennessee is one year. *See* TENN. CODE ANN. § 28-3-104(a)(1).

The real dispute between the parties concerns when the one year began to run.  Both sides refer to *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975), as setting forth Tennessee's rule on that issue.  Federal law, however, controls the determination of when a civil rights action accrues. *See Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).  In *Sevier*, this court concluded as follows: "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.  A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 273 (citations omitted).  This court has also stated that "[i]n determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).

As noted previously, the magistrate judge placed great weight on the fact that the Vanderbilt experiments had received a significant amount of media attention in the mid-

1990s.   Indeed, "[w]here events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence." *United Klans of Am. v. McGovern*, 621 F.2d 152, 154 (5th Cir. 1980).  The facts of this case represent just such a situation.  The press release issued by Vanderbilt in January of 1994 led to the publication of front-page stories in Nashville's two leading newspapers.  One year later, those same newspapers, as well as a major television network, issued reports on a nearly identical lawsuit filed by Henley.

This publicity was sufficient to charge Hughes with constructive knowledge of the events underlying her cause of action, especially in light of the fact that, at all relevant times, she resided in Nashville. *See id.* at 154-55 (holding that the plaintiffs should have known that they had a potential claim against the defendants when the defendants held a press conference that revealed facts supporting such a claim and when the conference led to the publication of articles in at least two newspapers circulated within the federal district in which the suit was eventually filed).

In support of her appeal, Hughes asserts that she should not be charged with constructive knowledge because she did not hear or read any of the media reports discussed above.  She argues in her brief as follows: "At the time of these articles, Mrs. Hughes did not take nor read the newspapers.  Nor did she watch Channel 5.  Her husband with whom she had never discussed her experience at Caldwell School did not take the newspaper until 1995 or 1996."

The relevant inquiry in cases such as the one before us, however, is an objective one. *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1254 (1st Cir. 1996) (noting that the objective standard is the appropriate test for determining a "date of discovery"); *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995) ("[T]o determine if inquiry notice has been triggered an objective 'reasonable' diligence standard must be applied to the facts."); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987) ("[T]he extent to which a plaintiff