SHEET METAL EMPLOYERS INDUSTRY Promotion Fund; Sheet Metal Employers Industry Apprenticeship Reimbursement Fund, Plaintiffs–Appellants,

v.

ABSOLUT BALANCING CO., INC.; Enviro–Aire/Total Balance Co., Inc.; Aerodynamics Inspecting Co.; Airflow Testing, Inc.; Barmatic Inspecting Co., Defendants–Appellees.

No. 15-1682

United States Court of Appeals, Sixth Circuit.

Argued: June 14, 2016

Decided and Filed: July 18, 2016

ARGUED: Ronald S. Lederman, Sullivan, Ward, Asher & Patton, P.C., Southfield, Michigan, for Appellants. Scott Rooney, Names Rooney & McKindles PC, Farmington Hills, Michigan, for Appellees. ON BRIEF: Ronald S. Lederman, Sullivan, Ward, Asher & Patton, P.C., Southfield, Michigan, for Appellants. Scott Rooney, Names Rooney & McKindles PC, Farmington Hills, Michigan, Liisa R. Speaker, Speaker Law Firm, PLLC, Lansing, Michigan, for Appellees.

Before: GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

## OPINION

JULIA SMITH GIBBONS, Circuit Judge.

Plaintiffs-Appellants Sheet Metal Employers Industry Promotion Fund and Sheet Metal Employers Industry Reimbursement Fund (collectively the "Funds") are multi-employer funds established by a collective bargaining agreement ("CBA") between the Sheet Metal and Air Conditioning Contractor National Association—Metropolitan Detroit Chapter ("SMACNA") and the Sheet Metal Worker's International Association Local Union No. 80 ("Local 80"). The Funds seek confirmation of arbitration awards granted against five corporate employers: Absolut Balancing Co., Inc. ("Absolut"), Enviro-Aire/Total Balance Company, Inc. ("Enviro-Aire"), Aerodynamics Inspecting Co. ("Aerodynamics"), Airflow Testing, Inc. ("Airflow"), and Barmatic Inspecting Co. ("Barmatic") (collectively the "Employers"). The district court declined to confirm the award, concluding that there was an open question as to whether the Employers were party to

the CBA, and, thus, whether they were bound to the CBA's arbitration procedures. After initially ruling that state law applied to the question of whether the Employers were bound to arbitrate under the CBA, the district court certified a question for appeal pursuant to 28 U.S.C. § 1292(b): whether state or federal law will apply at trial to the question of whether the Employers "are bound/signatory to" the CBA?

■ While state contract law may provide helpful guideposts to federal courts, it is well-established that in the field of labor relations, the technical rules of contract law do not determine the existence of a CBA. The law to be applied to the question of whether a party has assented to the terms of a CBA, including an arbitration provision, is ultimately federal.

### I.

In 2011, the Funds filed grievances with the Local Joint Adjustment Board ("LJAB") against the Employers, alleging that since 2004, the Employers failed to make required contributions to the Funds as required under the CBA originally executed between SMACNA and Local 80. None of the Employers participated in the arbitration proceedings. Instead, the Employers sent letters to the arbitrator maintaining that the grievance procedures specified in the CBA did not apply to them.

On February 25, 2011, and March 9, 2011, the LJAB issued two decisions finding that the Employers were liable for failure to make payments to the Funds. The LJAB awarded specific amounts in delinquent contributions against each of the Employers, but the Employers failed to comply with the LJAB decision.

The Funds filed an action, under 29 U.S.C. § 185(c) of the Labor Management Relations Act ("LMRA"), on February 20, 2012, seeking enforcement of the arbitration awards against the Employers. On May 25, 2012, the Funds moved to confirm the award through a motion for summary judgment. The district court denied the motion, concluding that there was a "genuine dispute of fact as to whether Defendants have agreed to the CBA, which contains the provisions creating the Promotion Fund, the Reimbursement Fund, and the authority of the LJAB to arbitrate disputes arising from the CBA." DE 34, Order, Page ID 684–85. In light of this dispute, the court determined that judicial enforcement of the CBA against the Employers would be contrary to public policy if the Employers were in fact not signatories to the CBA.

The district court instructed the parties to supplement the record with respect to whether the Employers were party to the CBA and its arbitration provision. After supplemental discovery, the parties filed cross motions for summary judgment. In denying both motions, the district court concluded that "whether Defendants are signatories to the CBA and its arbitration provision ... is neither subject to rights created by the CBA nor 'substantially dependent' on interpretation of the CBA, and thus federal law does not apply." DE 120, Order, Page ID 3733 n.4. In the district court's view, Congress intended federal law to apply only to claims "founded 'directly on rights created by collective bargaining agreements' and claims substantially dependent on the analysis of a collective bargaining agreement." *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). The court ultimately ruled that "[b]ecause arbitration agreements are fundamentally contracts, [the Court must] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Id.* at

3733 (quoting *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011)) (alterations in original). The court went on to explain that neither the Funds nor the Employers cited Michigan law in their briefs,[1] thus leaving "it to the Court to speculate as to whether their arguments are supported by the 'applicable state law of contract formation.'" *Id.* Rather than apply Michigan law to the facts of the case, the district court "refuse[d] to engage in such speculation" and instead found that a genuine dispute still existed as to whether the Employers were party to the CBA and whether they had agreed to the CBA's arbitration provision. *Id.* at 3733–34.

After the district court denied the cross motions for summary judgment, the Funds filed a motion for reconsideration, which the court denied on September 8, 2014. It concluded that the prior order denying the parties' cross-motions for summary judgment was the law of the case and ordered that the case proceed to trial. However, a few months later, the district court entered a stipulation and order certifying a question for appeal and staying the case. The parties agreed to the following question: "whether state law or federal law applies at the time of trial to determine whether the Defendants in this matter are bound/signatory to the applicable Collective Bargaining Agreement[?]" DE 126, Stipulation, Page ID 3785–86. As required by Federal Rule of Appellate Procedure 5, the Funds filed a petition for permission to appeal within ten days of the district court's certification order.

Under § 1292(b), we have discretion to permit an interlocutory appeal from a district court order if "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (citation omitted). Another panel of this court determined that all three factors were present and granted the Funds permission to appeal on June 12, 2015.

## II.

On interlocutory appeal under 28 U.S.C. § 1292(b), our review is limited to the district court's conclusions of law, which we review *de novo*; we do not review disputed questions of fact. *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1023 (6th Cir. 2001) (citing *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997); *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 202 (6th Cir. 1992)).

## III.

"It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (alterations in

---

1. At oral argument, counsel for the Employers, Scott Rooney, represented to the court that in his motion for summary judgment he cited Michigan law on the issue of contract formation. A review of the Employers' motion for summary judgment and its response to plaintiff's motion for summary judgment reveals no reference to state law. (*See* DE 106, Mot. Summ. J., Page ID 1617–45; DE 114, Resp. to Mot. Summ. J., Page ID 2639–69.) In the future, counsel would do well to avoid representing that his filings contain arguments that are not in fact in the filing.

362

original)); *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) ("Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." (citations omitted)). Because arbitration is strictly a matter of consent, *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), before a court orders arbitration of a particular dispute, it must satisfy itself "that the parties agreed to arbitrate that dispute." *Granite Rock,* 561 U.S. at 297, 130 S.Ct. 2847 (emphasis omitted). In so doing, it must resolve "any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id.*; *see also Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003). This inquiry naturally involves the question raised by this interlocutory appeal: should courts consult state or federal law in determining whether a valid agreement to arbitrate exists?

In *Textile Workers Union of America v. Lincoln Mills of Alabama,* the Supreme Court recognized that 29 U.S.C. § 185(a) of the LMRA authorized federal courts to create a body of federal law for the enforcement of collective bargaining agreements "fashion[ed] from the policy of our national labor laws." 353 U.S. 448, 450–51, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The question here is whether threshold questions of contract formation in the labor relations context are governed by this substantive federal common law.

▮ In the typical arbitration case, "[w]hen deciding whether the parties agreed to arbitrate a certain matter … courts generally … should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also Hergenreder,* 656 F.3d at 416. However, a "collective bargaining agreement is not an ordinary contract," *Wiley,* 376 U.S. at 550, 84 S.Ct. 909, and "[t]he rule is well established that technical rules of contract do not control whether a collective bargaining agreement has been reached." *Pepsi–Cola Bottling Co. of Mason City, Iowa v. NLRB,* 659 F.2d 87, 89 (8th Cir. 1981); *see also Nat'l Roof Sys., Inc. v. NLRB,* 983 F.2d 1068, 1993 WL 1294, at *6 (6th Cir. 1993) ("Technical rules of contract formation do not control whether a collective bargaining agreement has been reached"); *Mack Trucks, Inc. v. Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am., UAW,* 856 F.2d 579, 591 (3d Cir. 1988); *Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union,* 835 F.2d 1164, 1168 (6th Cir. 1987). "State law may be utilized so far as it is of aid in the development of correct principles or their application in a particular case, but the law which ultimately results is federal." *Wiley,* 376 U.S. at 548, 84 S.Ct. 909 (citation omitted).

This precept holds true where a party challenges its obligation to arbitrate under a CBA. In *Wiley,* a union sought to compel arbitration against the defendant, a successor-in-interest to a company that was signatory to a CBA. *Id.* at 544–45, 84 S.Ct. 909. The defendant was not party to the CBA, and it argued that the merger between it and its predecessor terminated the CBA for all purposes. *Id.* at 545, 84 S.Ct. 909. The Supreme Court noted that "the principles of law governing ordinary contracts would not bind to a contract an unconsenting successor to a contracting party," but it ultimately rejected traditional contract principles in favor of a "[f]eder-

al law[ ] fashioned from the policy of our national labor laws." *Id.* at 548, 550, 84 S.Ct. 909 (internal quotation marks omitted). Under federal labor law, then, the defendant was bound to arbitrate despite the fact that it had not clearly assented to the CBA's terms. *Id.* at 550–51, 84 S.Ct. 909. The Court reasoned that while "the duty to arbitrate ... must be founded on a contract, the impressive policy considerations favoring arbitration [were] not wholly overborne by the fact that Wiley did not sign the contract being construed." *Id.* at 550, 84 S.Ct. 909.

■ Given the "central role of arbitration in effectuating national labor policy," *id.* at 549, 84 S.Ct. 909, it is appropriate to apply federal law to determine whether parties have agreed to arbitrate under a CBA. The Supreme Court has recognized that "interests in interpretive uniformity and predictability ... require that labor-contract disputes be resolved by reference to federal law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Applying federal labor law to the threshold issue of contract formation will further these important interests. The practical realities of collective bargaining similarly oblige us to reject traditional contract law in favor of federal labor law. *See Pepsi–Cola*, 659 F.2d at 89 ("In a private commercial setting, the parties voluntarily contract with each other.... In contrast, the National Labor Relations Act compels the employer and the duly certified union to deal with each other and to bargain in good faith."). "Reasoned flexibility in the application of contract law to the field of labor relations is necessary to fully effectuate the policies underlying federal labor law." *Capitol–Husting Co. v. NLRB*, 671 F.2d 237, 242 (7th Cir. 1982); *see also Trs. of Atlanta Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp.*, 724 F.2d 1458, 1459

(11th Cir. 1983) (noting that "federal courts have liberally applied contract law in determining whether an enforceable labor agreement exists").

■ While the parties' briefing on appeal belabors the factual context underlying their contractual arrangement (or lack thereof), our analysis must stop short of deciding whether the Employers are bound to arbitrate under the CBA. As this court recognized in *Bobbie Brooks*, "[w]hether a collective bargaining agreement exists is a question of fact." 835 F.2d at 1168. Because our review does not extend to disputed questions of fact on interlocutory appeal, *Foster*, 970 F.2d at 202, we decline to weigh in on whether the Employers "are bound/signatory to the applicable [CBA]."

### IV.

Based on the foregoing, we reverse the district court's order denying the parties' cross motions for summary judgment and remand for further proceedings consistent with this opinion.