NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0195n.06

No. 21-3570

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LORRAINE ADELL, individually and on behalf of all others similarly situated, | ) ) ) | **FILED**<br>May 11, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CELLCO PARTNERSHIP, doing business as Verizon Wireless, | ) ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

BEFORE: GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Lorraine Adell challenges the district court's decision compelling her to arbitrate her claims against Cellco Partnership based on an arbitration clause in her Customer Agreement with Verizon Wireless. Adell asserts that the waiver of her Article III right to bring her state-law claims through diversity jurisdiction in federal court was not voluntary and that the Class Action Fairness Act of 2005 overrides the Federal Arbitration Act with respect to the arbitration of class action claims. The district court rejected these arguments in granting Verizon's motion to compel arbitration, granting Verizon's request to confirm the arbitration award, and rejecting Adell's motion to vacate the arbitration reward. For the reasons that follow, we **AFFIRM** the district court's judgments.

## I.    BACKGROUND

Adell became a Verizon Wireless customer in September 2015.  When signing up for Verizon service, Adell accepted Verizon's Customer Agreement, which included a statement agreeing that both parties would resolve disputes exclusively through arbitration or in small-claims court.  In March 2018, she sued Verizon in the U.S. District Court for the Northern District of Ohio.  (Adell alleged that, in October 2005, Verizon introduced a monthly administrative charge on wireless customers for each line.  This charge was, at some point, as much as $1.23 per line monthly.  In 2010, the charge was $0.92 per line and generated approximately $84 million in revenue per month.  According to Adell, Verizon first noted the administrative charge in its November 2006 Customer Agreement, explaining that the company "may also include Federal Universal Service, Regulatory and Administrative Charges, and may also include other charges related to our governmental costs."  (R. 7-1, Verizon Customer Agreement, PageID 43)  Adell alleged that these charges must be put toward governmental costs.  However, "Verizon has used the Administrative Charge as a discretionary pass-through of Verizon's general costs," such as the cost of building cell sites.  (R. 1, Complaint, PageID 3)  The complaint asserted that using the costs in this way allows Verizon to increase the monthly rate for service without disclosure to its customers, breaching Verizon's contracts with Ohio and nationwide customers.

Adell sought to challenge the charge both individually and through a class action on behalf of two classes.  The first class would include "all Verizon wireless telephone customers."  Adell brought a declaratory judgment on behalf of this class, seeking a declaration that the arbitration clause in the Customer Agreement was, as applied to state-law claims against Verizon for breach of contract under the Class Action Fairness Act of 2005 (CAFA), not voluntary or enforceable. This class also sought a declaration that the agreements to arbitrate state-law claims that CAFA allows plaintiffs to bring in federal courts through diversity jurisdiction "are not enforceable

because of the 'inherent conflict' between arbitration under the FAA and CAFA's express purposes as stated by Congress." The second class included "all Verizon wireless telephone customers whose wireless phones have an Ohio area code." Adell sought damages for breach of contract based on Verizon's imposition of the administrative charge.

In June 2018, Adell moved for partial summary judgment on her individual claims for declaratory judgment, including her arguments that the waiver of her right to bring a case in an Article III court against Verizon was not voluntary, conflicted with CAFA, and was therefore not enforceable. Later in June, Verizon moved the district court to compel Adell's state-law claims to arbitration and to stay the case until the end of the arbitration process. In March 2019, the district court granted Verizon's motion to compel arbitration, denied Adell's motion for partial summary judgment, and stayed the case pending the completion of arbitration.

Adell and Verizon arbitrated their dispute through the American Arbitration Association. They agreed to a summary disposition based on pre-hearing motions on Adell's breach of contract claim. On August 22, 2020, **t**he arbitrator concluded, based on Ohio law, that "the Agreement in its entirety does not appear to require that Administrative Charges be related to government costs and cannot be said to be ambiguous as it relates to administrative charges." Therefore, Adell's claim for breach based on Verizon's imposition of administrative charges unrelated to government costs failed. The arbitrator denied Adell's claims for breach of contract, specific performance, and partial summary disposition, and granted Verizon's motion for summary adjudication. The arbitrator ordered the parties to pay $1,900.00 in administrative fees and expenses to the American Arbitration Association and $2,500.00 as compensation to the arbitrator.

After the district court confirmed the arbitration award and denied Adell's motion to vacate that award, Adell brought this appeal. She challenges both the district court's March 2019 opinion

and order compelling arbitration and the opinion and order denying her motion to vacate the

arbitration award.

## II.   ANALYSIS

The Arbitration Agreement Adell signed as part of her Customer Agreement with Verizon

states, in pertinent part:

> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. . . . WE ALSO BOTH AGREE THAT:**
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").  YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU. . . .
>
> **(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD.  NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM.  NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT.  ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR. . . .**

(R. 21-2, Sandoval Declaration, PageID 263–64)  The parties do not dispute that Adell's Customer

Agreement with Verizon from September 2015 includes an arbitration clause that covers Adell's

breach of contract claim. Adell also concedes that the clause requires the bilateral, rather than class, arbitration of disputes and limits her to individual relief in that process. The disagreement lies with whether this clause is enforceable under federal law.

Arbitration agreements fall under the ambit of the Federal Arbitration Act (FAA), which provides than an arbitration clause in "a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA evinces "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As arbitration agreements are contracts, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). If a court is "satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The district court entered such an order, and Adell asserts on appeal that two independent reasons show the decision to be erroneous. First, Adell insists that she did not voluntarily waive an Article III adjudication of her breach of contract claim against Verizon. Second, she argues that the "inherent conflict" between CAFA and the FAA means that claims falling within a federal court's diversity jurisdiction through CAFA are no longer within the FAA's bounds. We take each argument in turn.

"When reviewing a district court's decision to confirm or vacate an arbitration award, we review factual findings for clear error and questions of law de novo." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 303 (6th Cir. 2008) (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir. 2000)). We review both denials of motions for summary judgment and decisions to compel

arbitration pursuant to the FAA de novo. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 415 (6th Cir. 2011); *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 433 (6th Cir. 2019).

### A. Voluntariness Under the Federal Arbitration Act

Adell's first challenge to the enforceability of the arbitration clause in the Customer Agreement is that she did not consent to the arbitration of her claims. Consent is a prerequisite to the enforcement of arbitration agreements under the FAA. *See, e.g.*, *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584 (1985). Courts cannot require a party to arbitrate a dispute if that party has not agreed to do so. *United Steelworkers of Am. v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960). Once parties have agreed to arbitrate, though, courts must "rigorously enforce" those agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

Adell contends that, on the issue of consent, we have used a "'knowing and voluntary' standard in the context of FAA arbitration, but not in connection with Article III." She relies on the decision in *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665 (2015), which concluded that the "knowing and voluntary" consent of parties to a bankruptcy court's adjudication of claims that are otherwise within the jurisdiction of an Article III court does not offend constitutional principles. Adell argues that we should "extend" this standard to assessing whether she consented to the waiver of her right to Article III adjudication. She then asserts that the application of this standard shows "that Verizon's adhesive denial of the right to refuse non-Article III arbitration by Adell and still receive her equipment and services from Verizon is not 'voluntary' under the Constitution, and that the waiver of her Article III rights is unenforceable."

Nothing in the record, however, supports Adell's claim that her consent to the Customer Agreement was not knowing and voluntary. *Wellness International*, moreover, did not disrupt the firmly established rule that consent is a prerequisite to the enforcement of arbitration agreements. *See United Steelworkers of Am.*, 363 U.S. at 582. We "review the enforceability of an arbitration

agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). Here, the Customer Agreement states that it is "governed by federal law and the laws of the state encompassing the area code of [the customer's] wireless phone number," which requires us to apply Ohio law. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011). Adell asserts that Verizon's requirement that she waive her personal right to bring claims in a federal court to receive Verizon's equipment and services left her without a choice but to waive her personal rights under Article III. This argument is essentially a claim that the agreement is unconscionable. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (explaining that an unconscionability argument under Ohio law raised the issue of "the disparity in bargaining power between the parties to the agreement"). We therefore evaluate Adell's arguments under Ohio's unconscionability doctrine. A party arguing unconscionability under Ohio law must show:

> (1) substantive unconscionability, i.e., unfair and unreasonable contract terms, and (2) procedural unconscionability, i.e., individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. Both elements must be present to find a contract unconscionable.

*Id.* "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009).

Beyond her general arguments against the arbitration clause, Adell does not offer any example of how the Customer Agreement is substantively unconscionable. Instead, she focuses on the fact that she could not receive Verizon services and equipment without waiving her personal Article III rights. She rejects the district court's finding that she could refuse to sign the Customer Agreement and seek cell phone equipment and service elsewhere, countering that this argument does not comport with the discussion of the importance of cell phones in recent Supreme Court

opinions and oral argument. However, our precedent has squarely rejected similar arguments. In evaluating analogous claims that an arbitration clause in a cell-phone contract was procedurally unconscionable, we explained that the plaintiff was not entitled to use a particular wireless provider. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 974 (6th Cir. 2009). Adell does argue in her reply that the three other major carriers include similar arbitration clauses in their customer agreements, but that alleged fact does not negate the voluntariness of her decision to contract for cell-phone service with Verizon. Although Verizon undoubtedly has greater economic power than Adell, she has not offered the proof necessary to show that the Customer Agreement was both procedurally and substantively unconscionable, especially given that she has offered no evidence that Verizon was her only option for cell-phone service. Without more, we must find Adell's arbitration agreement with Verizon enforceable.

### B.     The Class Action Fairness Act

Adell further argues that her agreement to bilateral arbitration in the Verizon Customer Agreement is unenforceable because CAFA conflicts with and displaces the FAA with respect to class action claims like hers. According to Adell, Congress's grant of jurisdiction to the federal courts over smaller class action lawsuits in CAFA guaranteed her right to federal adjudication of her claim. She points to the statutory language on Congress's purpose in enacting CAFA, the legislative history, and the statutory text granting federal courts jurisdiction over class action lawsuits such as hers. Adell asserts that even applying the Supreme Court's instructions in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), for evaluating possible displacement of the FAA, CAFA clearly displaces the FAA.

In *Epic Systems Corp.*, the Supreme Court considered whether the National Labor Relations Act (NLRA) overrode the enforceability of arbitration clauses in employment agreements. 138 S. Ct. at 1624. The goal when construing two statutes, the Court explained, is to

interpret the acts "to give effect to both." *Id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). Courts may find displacement only when there is "'clear and manifest' congressional intention to displace one Act with another." *Id.* (quoting *Morton*, 417 U.S. at 551); *see also Gaffers v. Kelly Servs., Inc.* 900 F.3d 293, 295 (6th Cir. 2018). Furthermore, courts must embrace "the 'stron[g] presum[ption]' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp.*, 138 S. Ct. at 1624 (alterations in original) (quoting *United States v. Fausto*, 484 U.S. 439, 452–53 (1988)). Applying these standards, the Supreme Court concluded that the NLRA, although creating rights to unionization, collective bargaining, and union bargaining to prohibit arbitration, did not show a clear congressional intent to displace the FAA. *Id.* Also compelling was "the fact that when Congress wants to mandate particular dispute resolution procedures[,] it knows exactly how to do so." *Id.* at 1626. Given the absence of such obvious language on the proper "procedures for resolving 'actions,' 'claims,' 'charges,' and 'cases,'" the Court concluded that the evidence pointed against a displacement of the FAA. *Id.* The Court further emphasized the losing record of cases arguing conflicts between the FAA and other statutes. *Id.* at 1627. "[E]ven a statute's express provision for collective legal actions does not necessarily mean that it precludes 'individual attempts at conciliation' through arbitration." *Id.* Ultimately, "the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act." *Id.*

Adell has not pointed to evidence that could overcome the high barrier for displacement of the FAA, and no other argument she makes in support of her reading requires a different outcome. CAFA undoubtedly discusses class actions, but it neither mentions arbitration nor offers the "clear and manifest congressional intention" signaling FAA displacement. CAFA focuses on the

jurisdiction of the federal courts and grants district courts "original jurisdiction" for class actions "in which the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2). The "findings and purposes" set out in CAFA express the importance of class action lawsuits, including that broader jurisdiction for class action lawsuits will "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(a)–(b), 119 Stat. 4 (2005). These are not clear statements displacing the FAA. The legislative history that Adell cites is similarly unable to surmount the "uphill climb" to prove displacement. *Epic Sys. Corp.*, 138 S. Ct. at 1624. Although the Senate Report expresses the importance of district-court jurisdiction over—meaning the *ability* to hear—class action cases, it does not indicate that CAFA was meant to preclude parties from privately contracting to adjudicate such cases through bilateral arbitration instead. *See* S. Rep. No. 109-14 (2005). Ultimately, the jurisdictional changes wrought through CAFA do not show an obvious conflict with the FAA that would make Adell's arbitration agreement with Verizon unenforceable. We can, and the district court did, give effect to both. The district court here had jurisdiction over Adell's case through CAFA and exercised that jurisdiction when compelling arbitration and enforcing the arbitration award.

## III.   CONCLUSION

For the reasons discussed above, we reject Adell's challenges to the enforceability of her arbitration agreement with Verizon and **AFFIRM** the district court's judgments.